## Public Assistance Visitors and Records

RENO, Attorney General, April 21, 1939.—We have your request to be advised as to necessity of testifying in civil proceedings and advisability of withholding subpoenaed records. You ask two questions, which we shall present and answer seriatim.

■ Whether a visitor from your department would be compelled to testify in civil proceedings concerning facts of which she has personal knowledge, even though this knowledge was gained in her capacity as a representative of the department.

According to Marks' Appeal, 121 Pa. Superior Ct. 181, which cites at length authorities in this field, the answer would be in the affirmative. In this case, quoting Judge Hargest, formerly Deputy Attorney General, in an opin-

ion, State Department of Health, 27 Dist. R. 510, the court said (p. 183):

" 'The physician in charge of a dispensary of the Department of Health is like any other physician in charge of any other institution. He is subject to subpœna, by a proper tribunal and must obey such subpœna. When he responds he must testify as any other witness to any relevant, competent matter within his knowledge. The fact that this information was obtained through his employment as a physician in charge of a State institution does not render him exempt from testifying, or seal his lips as to the knowledge which he has obtained. I know of no statute which excuses the physician in charge of a State dispensary from testifying as to such facts. . . . The party who made the examination may be subpœnaed and required to testify as to the results of such examination, and such testimony is better evidence than the record would be in the absence of the party who made it.' "

Since visitors represent those who investigate eligibility and continued eligibility for assistance, they must testify concerning facts of which they have knowledge, though such facts were gained in their official capacity.

■ Whether it would be lawful for you, as secretary, to delegate to the county boards of assistance the authority to make decisions on the advisability of submitting or withholding subpœnaed records in particular instances.

According to Marks' Appeal, supra, the answer is in the affirmative. The court there held, as stated in the syllabus (p. 181):

"1. In the absence of statutory provision to the contrary, the department of health of a municipality may not be required, upon subpœna of a private litigant in an action at law, to produce for inspection records and reports under its control relative to communicable diseases or the treatment of persons suffering from such diseases, where the production of such records and reports is against public policy.

"2. Whether such records and reports are proper for publication or general inspection or whether they should be withheld in the public interest is a matter for determination of the officer in charge."

There is no doubt that the records of the Health Department regarding diseases represent information of a confidential nature. The authorities are also clear that the administrative officer in charge of the records shall be the judge as to whether or not they are confidential and whether publication in open court would be inimical to the public interest.

Cases and decisions are agreed that the Governor, the Chief Executive, represents a coördinating branch of the government with the judiciary, and that this always applies to subordinate agencies of the Chief Executive.

Note Production of State Records in Court, 2 D. & C. 725, 728, where it is stated:

". . . where officers of your department, being a branch of the executive authority of the State government, are subpoenaed to appear and bring with them certain confidential records procured solely in their official capacity, you shall judge, in the first instance, whether or not the production of such records would be inimical to the public welfare; that, having so determined, you shall act accordingly, and that if, in your judgment, such records should not be produced, you should make respectful presentation to the court of your opinion in the matter, expressly disavowing any disrespect for the dignity and authority of said court, but setting forth your conviction that you must determine, in the first instance, from your knowledge of the records, whether or not they are such as should be made public."

The court in Marks' Appeal, supra, emphasized this point (p. 185):

". . . the question whether their production would be so injurious must be determined, not by the judge, but by the head of the department having the custody of the documents; for, the Chief Baron [Pollock] said: 'The

judge would be unable to determine it (that is, the question whether production of the document would be injurious to the public service) without ascertaining what the document was, and why publication would be injurious to the public service—an inquiry which cannot take place in private, and which taking place in public may do all the mischief which it is proposed to guard against.' " The court further said (p. 192) :

" 'These records are in no true sense of the words "public records"; they are departmental records . . .' ".

It is seen that all the cases and opinions involve records of the Health Department regarding disease. Public policy behind the decisions is readily seen from this excerpt from the excellent opinion in the Marks' case (p. 187) :

"Persons suffering from contagious or infectious diseases, including sufferers from tuberculosis, must be assured of the greatest secrecy in dealing with their cases before their full co-operation with the public health authorities can be expected."

Is this not analogous to the situation in the Department of Public Assistance? We feel that it is, for public assistance records contain data fully as confidential as those of the Department of Health: See Pennsylvania Federation of the Blind v. State Council for the Blind, 29 D. & C. 421, 424, 425.

We are of the opinion, and you are advised, that visitors from your department can be compelled to testify in proceedings concerning facts of which they have personal knowledge, even though the knowledge was gained in their capacity as a representative of the department; also that subpœnaed records of your department can be withheld, and that it would be lawful for you, as Secretary of the Department of Public Assistance, to delegate to the county boards of assistance authority to make decisions on the advisability of submitting or withholding subpœnaed records in particular instances, though local boards should be governed by general rules promulgated by the Department of Public Assistance.